THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* SAMUEL JAFFE, Appellant.

CRIMES — CRIMINALLY RECEIVING PROPERTY — PENAL CODE, SECTION 550 — WHEN DEFENDANT INDICTED THEREUNDER CANNOT BE CONVICTED OF AN ATTEMPT TO COMMIT THE CRIME. Where a defendant was indicted, under the statute (Penal Code, § 550), for feloniously receiving goods knowing that they had been feloniously stolen, taken and carried away from the owners thereof, and the undisputed proof shows that the goods, which the defendant attempted to purchase, had lost their character as stolen goods at the time they were offered to him, such goods having been restored to the owners after the discovery of the theft thereof, and being wholly within their control when they were offered for sale to the defendant, by their authority and through their agency, a judgment convicting the defendant of the crime charged cannot be sustained upon the ground that the defendant may be convicted of an attempt to commit the crime, although the property which he sought to receive was not in fact stolen property; since the act, which it was doubtless the intent of the defendant to commit, would not have been a crime if it had been consummated. If he had actually paid for the goods which he desired to buy and received them into his possession, he would

32

have committed no offense under section 550 of the Penal Code, because the very definition in that section of the offense of criminally receiving property makes it an essential element of the crime that the accused shall have known the property to have been stolen or wrongfully appropriated in such manner as to constitute larceny. This knowledge being a material ingredient of the offense, it is manifest that it cannot exist unless the property has in fact been stolen or larcenously appropriated. No man can know that to be so which is not so in truth and in fact. He may believe it to be so but belief is not enough under this statute.

*People* v. *Jaffe,* 112 App. Div. 516, reversed.

(Argued June 11, 1906; decided June 21, 1906.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 25, 1906, which affirmed a judgment of the Court of General Sessions of the Peace in the county of New York, rendered upon a verdict convicting the defendant of the crime of an attempt to receive stolen goods knowing the same to have been stolen.

The facts, so far as material, are stated in the opinion.

*Henry W. Unger* and *Abraham Levy* for appellant. The facts in this case did not warrant the conviction of the defendant for the crime of an attempt to criminally receive stolen goods. (Penal Code, § 550; 2 Bishop's Cr. Law, 1140; 1 McClain's Cr. Law, § 226; *People* v. *Moran*, 123 N. Y. 254; *State* v. *Wilson*, 30 Conn. 501; *People* v. *Gardner*, 73 Hun, 66; *Darrow* v. *F. F. Society*, 116 N. Y. 537; *Reg.* v. *Riley*, 1 D. & P. 43; *People* v. *Kane*, 43 App. Div. 487.)

*William Travers Jerome,* District Attorney (*Robert C. Taylor* of counsel), for respondent. Jaffe's act constituted an attempt. (*People* v. *Mills*, 91 App. Div. 331; 178 N. Y. 274; *People* v. *Conrad*, 102 App. Div. 566; 182 N. Y. 529; *People* v. *Du Veau*, 105 App. Div. 381; *People* v. *Moran*, 124 N. Y. 254; *People* v. *Gardner*, 144 N. Y. 119.)

Willard Bartlett, J. The indictment charged that the defendant on the 6th day of October, 1902, in the county of New York, feloniously received twenty yards of cloth of the

value of twenty-five cents a yard belonging to the copartner-
ship of J. W. Goddard & Son, knowing that the said prop-
erty had been feloniously stolen, taken and carried away from
the owners. · It was found under section 550 of the Penal
Code, which provides that a person who buys or receives any
stolen property knowing the same to have been stolen is
guilty of criminally receiving such property. The defendant
was convicted of an attempt to commit the crime charged in
the indictment. The proof clearly showed, and the district
attorney conceded upon the trial, that the goods which the
defendant attempted to purchase on October 6th, 1902, had
lost their character as stolen goods at the time when they
were offered to the defendant and when he sought to buy
them. In fact the property had been restored to the owners
and was wholly within their control and was offered to the
defendant by their authority and through their agency. The
question presented by this appeal, therefore, is whether upon
an indictment for receiving goods knowing them to have been
stolen the defendant may be convicted of an attempt to com-
mit the crime where it appears without dispute that the prop-
erty which he sought to receive was not in fact stolen property.

The conviction was sustained by the Appellate Division
chiefly upon the authority of the numerous cases in which it
has been held that one may be convicted of an attempt to com-
mit a crime notwithstanding the existence of facts unknown
to him which would have rendered the complete perpetration
of the crime itself impossible. Notably among these are
what may be called the pickpocket cases, where in prosecu-
tions for attempts to commit larceny from the person by
pocket picking it is held not to be necessary to allege or
prove that there was anything in the pocket which could be
the subject of larceny. (*Commonwealth* v. *McDonald,* 5
Cush. 365 ; *Rogers* v. *Commonwealth,* 5 S. & R. 463 ; *State*
v. *Wilson,* 30 Conn. 500 ; *People* v. *Moran,* 123 N. Y. 254.)
Much reliance was also placed in the opinion of the learned
Appellate Division upon the case of *People* v. *Gardner*
(144 N. Y. 119), where a conviction of an attempt to commit

the crime of extortion was upheld, although the woman from whom the defendant sought to obtain money by a threat to accuse her of a crime was not induced to pay the money by fear, but was acting at the time as a decoy for the police, and hence could not have been subjected to the influence of fear.

In passing upon the question here presented for our determination, it is important to bear in mind precisely what it was that the defendant attempted to do. He simply made an effort to purchase certain specific pieces of cloth. He believed the cloth to be stolen property, but it was not such in fact. The purchase, therefore, if it had been completely effected, could not constitute the crime of receiving stolen property, knowing it to be stolen, since there could be no such thing as knowledge on the part of the defendant of a non-existent fact, although there might be a belief on his part that the fact existed. As Mr. Bishop well says, it is a mere truism that there can be no receiving of stolen goods which have not been stolen. (2 Bishop's New Crim. Law, § 1140.) It is equally difficult to perceive how there can be an attempt to receive stolen goods, knowing them to have been stolen, when they have not been stolen in fact.

The crucial distinction between the case before us and the pickpocket cases, and others involving the same principle, lies not in the possibility or impossibility of the commission of the crime, but in the fact that in the present case the act, which it was doubtless the intent of the defendant to commit, would not have been a crime if it had been consummated. If he had actually paid for the goods which he desired to buy and received them into his possession, he would have committed no offense under section 550 of the Penal Code, because the very definition in that section of the offense of criminally receiving property makes it an essential element of the crime that the accused shall have known the property to have been stolen or wrongfully appropriated in such manner as to constitute larceny. This knowledge being a material ingredient of the offense it is manifest that it cannot exist unless the property has in fact been stolen or larcenously appropriated.

No man can know that to be so which is not so in truth and in fact.   He may believe it to be so but belief is not enough under this statute.   In the present case it appeared not only by the proof but by the express concession of the prosecuting officer that the goods which the defendant intended to purchase had lost their character as stolen goods at the time of the proposed transaction.   Hence, no matter what was the motive of the defendant, and no matter what he supposed, he could do no act which was intrinsically adapted to the then present successful perpetration of the crime denounced by this section of the Penal Code, because neither he nor any one in the world could know that the property was stolen property inasmuch as it was not in fact stolen property.

In the pickpocket cases the immediate act which the defendant had in contemplation was an act which if it could have been carried out would have been criminal, whereas in the present case the immediate act which the defendant had in contemplation (to wit, the purchase of the goods which were brought to his place for sale) could not have been criminal under the statute even if the purchase had been completed because the goods had not in fact been stolen but were at the time when they were offered to him in the custody and under the control of the true owners.

If all which an accused person intends to do would if done constitute no crime it cannot be a crime to attempt to do with the same purpose a part of the thing intended.  (1 Bishop's Crim. Law [7th ed.], sec. 747.)   The crime of which the defendant was convicted necessarily consists of three elements : first, the act; second, the intent; and third, the knowledge of an existing condition.   There was proof tending to establish two of these elements, the first and second, but none to establish the existence of the third.   This was knowledge of the stolen character of the property sought to be acquired.   There could be no such knowledge.   The defendant could not know that the property possessed the character of stolen property when it had not in fact been acquired by theft.

The language used by RUGER, Ch. J., in *People* v. *Moran*

(123 N. Y. 254), quoted with approval by Earl, J., in *People* v. *Gardner* (144 N. Y. 119), to the effect that " the question whether an attempt to commit a crime has been made is determinable solely by the condition of the actor's mind and his conduct in the attempted consummation of his design," although accurate in those cases, has no application to a case like this, where, if the accused had completed the act which he attempted to do, he would not be guilty of a criminal offense. A particular belief cannot make that a crime which is not so in the absence of such belief. Take, for example, the case of a young man who attempts to vote, and succeeds in casting his vote under the belief that he is but twenty years of age when he is in fact over twenty-one and a qualified voter. His intent to commit a crime, and his belief that he was committing a crime, would not make him guilty of any offense under these circumstances, although the moral turpitude of the transaction on his part would be just as great as it would if he were in fact under age. So, also, in the case of a prosecution under the statute of this state, which makes it rape in the second degree for a man to perpetrate an act of sexual intercourse with a female not his wife under the age of eighteen years. There could be no conviction if it was established upon the trial that the female was in fact over the age of eighteen years, although the defendant believed her to be younger and intended to commit the crime. No matter how reprehensible would be his act in morals, it would not be the act forbidden by this particular statute. "If what a man contemplates doing would not be in law a crime, he could not be said in point of law to intend to commit the crime. If he thinks his act will be a crime this is a mere mistake of his understanding where the law holds it not to be such, his real intent being to do a particular thing. If the thing is not a crime he does not intend to commit one whatever he may erroneously suppose." (1 Bishop's Crim. Law [7th ed.], sec. 742.)

The judgment of the Appellate Division and of the Court of General Sessions must be reversed and the defendant dis-

charged upon this indictment, as it is manifest that no conviction can be had thereunder. This discharge, however, in no wise affects the right to prosecute the defendant for other offenses of a like character concerning which there is some proof in the record, but which were not charged in the present indictment.

CHASE, J. (dissenting). I dissent. Defendant having with knowledge repeatedly received goods stolen from a dry goods firm by one of its employees, suggested to the employee that a certain specified kind of cloth be taken, he was told by the employee that that particular kind of cloth was not kept on his floor, and he then said that he would take a roll of a certain Italian cloth. The employee then stole a roll of the Italian cloth and carried it away, but left it in another store where he could subsequently get it for delivery to the defendant. Before it was actually delivered to the defendant the employers discovered that the employee had been stealing from them and they accused him of the thefts. The employee then confessed his guilt and told them of the piece of cloth that had been stolen for the defendant, but had not actually been delivered to him. The roll of cloth so stolen was then taken by another employee of the firm and it was arranged at the police headquarters that the employee who had taken the cloth should deliver it to the defendant, which he did, and the defendant paid the employee about one-half the value thereof. The defendant was then arrested and this indictment was thereafter found against him. That the defendant intended to commit a crime is undisputed. I think the record shows an attempt to commit the crime of criminally receiving property as defined in sections 550 and 34 of the Penal Code, within the decisions of this court in *People* v. *Moran* (123 N. Y. 254) and *People* v. *Gardner* (144 N. Y. 119).

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, VANN and WERNER JJ., concur with WILLARD BARTLETT, J.; CHASE, J., dissents in memorandum.

Judgment of conviction reversed, etc.